## Jillson v. Wilbur.

The plaintiff delivered a watch to A, under a conditional bargain, that if he kept it, he should pay an agreed price; or, if he returned it, he should pay a specific rent. A died, the price of the watch not having been paid, and his wife, with knowledge of the contract, administered upon his estate, embraced the watch in her inventory; the estate being settled as an insolvent estate, she received the watch, under a decree of the probate court, as part of her allowance, and subsequently sold it as her own private property.—*Held*, that the plaintiff had not lost his property in the watch; that the sale by the wife was a wrongful conversion; and that the plaintiff might maintain trover to recover the value of the watch.

The wife having again married, prior to her sale of the watch, the action of trover was properly brought against the husband and wife jointly.

TROVER, by Wheaton C. Jillson against Sanford Wilbur and Arvilla Wilbur, his wife, to recover the value of a watch, alleged in one count to have been converted by said Arvilla, wife of said Sanford, on the 20th of September, 1854, and in the second count on the 1st day of January, 1859. Plea — the general issue. The writ was dated February 25, 1859.

The plaintiff's evidence showed that, on the 11th day of February, 1850, he delivered to Timothy Pickering, then the husband of said Arvilla, a silver watch, receiving from him, at the same time, the following agreement in writing: viz., "Received of W. C. Jillson one silver detached lever watch, and I am to pay him twenty dollars for the same, and interest, if I have it; or 1s. 6d. per month; the watch is to be the said Jillson's until I pay him for it.

TIMOTHY PICKERING."

Pickering retained said watch up to the time of his death, March 16, 1852, having paid nothing upon it to the plaintiff; in the fall of 1855 said Arvilla was married to said Sanford Wilbur; and in 1856 sold the watch in

Jillson v. Wilbur.

Worcester, Mass., where she resided about two years; in September, 1858, the plaintiff made a demand upon her for the watch, but no demand had ever been made upon the said Sanford. The evidence further tended to show that said Arvilla was notified that the plaintiff claimed to own the watch, in the fall of 1852.

The defendants offered to prove that said Arvilla was duly appointed and qualified as administratrix of the estate of said Pickering, April 6, 1852; that said watch was duly appraised and inventoried in good faith as a portion of said Pickering's estate; that, at a probate court held on the first Tuesday of July, 1852, the sum of $84.82 was decreed and allowed her for her present support, in such articles as she might choose out of said inventory, and the whole estate being exhausted in payment of administration expenses, claims for last sickness, and allowance to the widow, the administratrix was discharged from further claims of the creditors of said estate; that these proceedings of the probate court were had after due notice, and were in due and usual form; and that said Arvilla, under said decree, took and retained said watch until it was sold in 1856. The court rejected this evidence, to which ruling the defendants excepted, and a verdict for the plaintiff being returned, the defendants moved that the same be set aside and for a new trial.

*Wheeler & Faulkner*, for the plaintiff.

1. The contract between Jillson and Pickering, February 11, 1850, was for a sale of the watch on condition; that condition not having been performed by Pickering in his life-time, the watch remained the plaintiff's property at the time of his death. *Luey* v. *Bundy*, 9 N. H. 298; *Davis* v. *Emery*, 11 N. H. 230; *Porter* v. *Pettingill*, 12 N. H. 299.

2. The evidence of the proceedings in the probate court, and in administering upon Pickering's estate, was

properly rejected. The decree of the judge of probate could not affect the rights of the plaintiff. He was in no sense a party to the proceedings, nor could it affect any other property than that which belonged to the deceased.

By the statute (Comp. Laws, ch. 175, sec. 1), the judge of probate can make an allowance to the widow only from the personal estate of the deceased. The decree, therefore, even if in its terms it embraced or was intended to embrace the specific property in question, which it did not, would be void for want of jurisdiction. *Wilson* v. *Edwards,* 24 N. H. 517; *Tebbetts* v. *Tilton,* 31 N. H. 273; *Chamberlain* v. *Carlisle,* 26 N. H. 552.

*Lane,* for the defendants.

1. The agreement between the plaintiff and Pickering, and the delivery of the watch to Pickering, vested in him the right of purchase at any time before it should be reclaimed by Jillson; and Pickering had a reasonable time to pay its price after Jillson should demand the watch. *Davis* v. *Emery,* 11 N. H. 233; *Fairbanks* v. *Phelps,* 22 Pick. 535. Such were Pickering's rights at his decease. No demand had been made of him for the watch or its price.

2. The evidence the defendants offered in relation to the appointment of Arvilla, as administratrix of Pickering's estate, and the proceedings in the probate court are admissible, in four points of view: (1.) To prove the defendants came rightfully into the possession of the watch: (2.) As evidence of ownership in the intestate Pickering; *Seavey* v. *Seavey,* 37 N. H. 131: (3.) To prove that the property in the watch was vested absolutely in Arvilla by the proceedings in the probate court and the decree of the judge, it being a judgment *in rem;* Comp. Stat. ch. 161, sec. 3; ch. 171, sec. 1; 1 Gr. Ev. secs. 525, 550; *Tebbetts* v. *Tilton,* 24 N. H. 125: (4.) Or at least that the defendants had succeeded to the rights

of the said Pickering, at his decease; the right to hold the property, and to have a reasonable time to pay for it after demand. And no demand having ever been made of said Sanford, the action cannot be maintained.

NESMITH, J. The first inquiry presented by this case will be directed to the character and extent of the agreement of the plaintiff with Timothy Pickering, made on the 11th of February, 1850. It seems now to be a well established rule of law, that a sale and delivery of goods, on condition that the purchase money be first paid or secured, does not pass the title to the vendee, and that the vendor has the right, in case the condition be not performed, to repossess himself of the goods. Actual payment of the stipulated price becomes a condition precedent to the investment of title. The possession of the vendee is a limited one, qualified by the terms of the contract, and conferring no right or authority to transfer title to another, till the requisite act be done, or the condition of the contract be first performed. The vendor retains the property in the goods; the vendee becomes a bailee for a specific time and purpose. Long on Sales 109; Ch. on Cont. 392, note; Hill. on Sales 116; *Sanborn* v. *Coleman*, 6 N. H. 14; *Sargent* v. *Gile*, 8 N. H. 325; *Porter* v. *Pettingill*, 12 N. H. 299; *Marston* v. *Baldwin*, 17 Mass. 606; *Ayers* v. *Bartlett*, 9 Pick. 156 ; *Dresser Manf. Co.* v. *Waterston*, 3 Met. 9 ; *Coggill* v. *Railroad*, 3 Gray 545. When the condition is waived, and how, is well discussed in *Sargent* v. *Metcalf*, 5 Gray 306.

In this case Pickering was a bailee for hire, for an unlimited time, with the right to purchase the watch at a specific price. The contract by which he gained the right to purchase gave him no right to sell to another, nor in any manner enlarged his right as bailee. He had the mere possessory right, which could not communicate title to another. It is very plain that a man who has no

authority to sell, cannot, by making a sale, transfer property to another. Ch. on Cont. 342. A lessee of chattels, or a bailee for a special purpose, can pass no title to a vendee, without authority from the bailor or lessor.

In 1852 Pickering died, having paid nothing either toward the price of the watch or for its use. Therefore, by the terms of his contract with the plaintiff, no title had vested in him or his estate. The watch, therefore, legally constituted no part of the estate of Pickering. Of course, the court of probate, upon his death, had no jurisdiction over it, as the property of the deceased, nor could a decree of that court affect the rights of the true owner. The plaintiff stands here as a stranger to the proceedings of the court of probate, is not a party to them, nor, as a privy, bound by them. Nor could the wife of the defendant, as administratrix, or in her private capacity, acquire a property in this watch, without first discharging the plaintiff's claim upon it, by fulfilling her husband's contract with him, of which she had due notice. The legitimate power and action of the court of probate was limited by statute law to the proper settlement and distribution of the estate of Pickering alone. *Morse* v. *Presby*, 25 N. H. 299; *Wilson* v. *Edmunds*, 24 N. H. 517; *Tebbetts* v. *Tilton*, 11 N. H. 275. Under the authority of these decisions, the court properly rejected the proceedings of the court of probate, as tending to constitute a defence to this action.

The case finds that the defendant's wife, in 1856, sold and converted to her own use the watch in suit. This, in law, was a wrongful conversion, and made husband and wife, upon their intermarriage, liable for its value in this form of action. The husband is liable for torts of the wife, and the husband should be joined; and for her wrongful acts before marriage they should be joined. *Head* v. *Burton*, 5 C. & P. 484; *Sargent* v. *Gile, supra; Whitmore* v. *Delano*, 6 N. H. 545. The sale amounts to a conversion. 4 Taunt. 127. No previous demand was

necessary. *Galvin* v. *Bacon*, 2 Fairf. 28 ; *Emerson* v. *Fiske*, 6 Gr. 200 ; *Loischman* v. *Macher*, 2 Stark. 34. The sale must be relied on by the plaintiff, as constituting a wrongful conversion of the watch, rather than the demand made in September, 1858.

We are of the opinion there should be
*Judgment on the verdict.*